UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERESA PATTERSON and ) | |
| NECHIE WOODARD, ) | |
| ) | No. 2:11-0115 |
| Plaintiffs, ) | Jury Demand |
| ) | |
| vs. ) | |
| ) | Judge Sharp |
| ) | Magistrate Judge Bryant |
| NORTH CENTRAL TELEPHONE ) | |
| COOPERATIVE CORPORATION ) | |
| d/b/a NORTH CENTRAL TELEPHONE ) | |
| COOPERATIVE, ) | |
| ) | |
| Defendant. ) | |

# FIRST AMENDED COMPLAINT

For their Complaint against Defendant North Central Telephone Cooperative Corporation d/b/a North Central Telephone Cooperative ("Defendant" or "North Central"), Plaintiffs Teresa Patterson ("Plaintiff" or "Ms. Patterson") and Nechie Woodard ("Plaintiff" or "Mr. Woodard") state as follows:

1. This is an action for equitable relief and damages for unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), 42 U.S.C. § 1981 (§ 1981), and the Tennessee Human Rights Act (THRA).

**Jurisdiction and Venue**

2. The Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 as this is a civil action and Plaintiffs' claims arise under laws of the United States.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to this action occurred within this district and Defendant is either located, resides, or does business in this district.

## Parties

4. Ms. Patterson is a resident of Westmoreland, Sumner County, Tennessee. She was employed as the Human Resources Manager for North Central for over 10 years until her unlawful termination in March 2010.

5. Mr. Woodard is a resident of Lafayette, Macon County, Tennessee. He was employed by North Central, most recently in its warehouse, for over 20 years until he was constructively discharged in November 2010.

6. North Central is a telephone cooperative with its principal place of business at 872 Highway 52 Bypass East, P.O. Box 70, Lafayette, Macon County, Tennessee, 37083. Its registered agent for service of process is James W. Chamberlain, 105 Ct. Square, Lafayette, Tennessee 37083.

7. North Central employs over 100 employees.

8. Plaintiffs are both white employees who were subjected to discrimination based upon their association with and/or advocacy on behalf of an African-American job applicant and/or advocating on behalf increased racial diversity in the recruiting and hiring process at North Central. Plaintiffs both suffered direct harm as a result of the discrimination against them.

## Facts

9. North Central has a long history of discriminating against African-American and other non-white individuals through institutionalized, intentional discrimination in the recruiting and hiring processes. North Central's intentional discrimination has been facilitated by policies

2

and practices designed to appear neutral but which nonetheless eliminate almost entirely the recruiting and hiring of African-American and other non-white job applicants. Indeed, upon information and belief, prior to the hiring of Dondi Malone, North Central had never hired an African-American to fill a permanent position in its long history as an employer. Still, North Central has received and continues to receive government money which is contingent upon its having an Equal Employment Opportunity policy that meets with government guidelines.

10. Instead of complying with government EEO laws, regulations and guidelines, North Central illegally limits persons it considers for hire by recruiting applicants only from within a limited geographic called the "Service Area." Moreover, North Central limits persons it considers for hire by requiring any and all applicants for employment to reside in the Service Area.

11. North Central's Service Area limitations in recruiting and hiring result in discrimination against minorities in both recruiting and hiring because the Service Area has a disproportionately low percentage of African-Americans and other minorities as compared to surrounding areas. Plaintiffs contend this discrimination is by design and intended to reduce minority applicants. In the alternative, Plaintiffs allege that these Service Area limitations are unlawful because they have a disparate impact on African-Americans and other minority applicants and would-be applicants.

12. North Central's history of intentional discrimination in recruiting and hiring are directly relevant to this case as this history serves as the backdrop for the discriminatory and retaliatory actions taken against the Plaintiffs for recommending an African-American for employment, encouraging diversity in the hiring process and/or opposing North Central's discriminatory recruiting and hiring policies and practices.

3

13. Upon information and belief, prior to unlawfully terminating Ms. Patterson's employment, North Central had never employed an African-American employee on a permanent basis. While employed by North Central, Ms. Patterson herself hired an African-American employee on a temporary basis, but North Central made the decision not to retain that employee permanently.

14. In early 2010, North Central's President, Nancy White, assigned Ms. Patterson to interview job applicants for two entry-level positions at North Central.

15. On or about March 2, 2010, Ms. White told Ms. Patterson that she had been doing a good job and that, as a result, she would be receiving a merit increase in her annual salary, which Ms. White had approved.

16. On or about March 3, 2010, Ms. Patterson met with Ms. White to review applicants for the two available entry-level positions.

17. During the March 3, 2010 meeting, Ms. Patterson suggested to Ms. White that one candidate, Dondi Malone, should move forward in the interview process.

18. Mr. Malone, an African-American man, had been introduced to and referred to Ms. Patterson by Mr. Woodard. Mr. Woodard knew Mr. Malone because Mr. Malone was working for a company that made deliveries to the North Central warehouse where Mr. Woodard worked. Mr. Woodard considered Mr. Malone a friend.

19. Ms. Patterson explained to Ms. White that Mr. Malone should be strongly considered both because of his qualifications and because of the diversity that he could add to North Central's workforce.

4

20. Ms. Patterson explained to Ms. White that while Mr. Malone did not live inside the Service Area, he had assured Ms. Patterson that he lived very close to it and would move into the Service Area upon being hired.

21. Ms. White chided Ms. Patterson stating that the policy was that an applicant had to live within the Service Area and not be willing to move into the Service Area upon being hired.

22. Approximately two days after recommending Mr. Malone and approximately three days after being given a merit increase in pay, North Central terminated Ms. Patterson's employment without warning, reprimand, or progressive discipline. North Central gave no reason for its discharge decision.

23. When Ms. Patterson repeatedly requested a reason for her termination, Ms. White repeatedly told Ms. Patterson, "I don't have to give you a reason."

24. After Ms. Patterson's initial interview of Mr. Malone, Mr. Malone was interviewed by Mack Wilmore, Don McCloud, DeWayne Hix, and Steve Massengill on March 17, 2010.

25. On April 5, 2010, Mr. Malone filed a complaint with North Central alleging racist behavior in the March 17, 2010 interview.

26. Mr. Malone wrote a letter to Ms. White complaining of being "treated wrongfully" by the men that interviewed him and threatening to take further action with the N.A.A.C.P. if North Central did not remedy the problem. This letter, dated April 1, 2010, is attached as Exhibit A and incorporated herein by reference.

27. At some point between March 17 and March 25, 2010, Mack Wilmore went to Mr. Woodard's office and said, "I should fire your ass." When Mr. Woodard asked why, Mr. Wilmore responded, "For recommending that [N word]" or with words very similar to those.

5

28. Mr. Woodard maintained that he had done nothing wrong in suggesting Mr. Malone for employment at North Central.

29. Mr. Wilmore then stated that although Mr. Malone seemed like a hard worker, North Central was not going to hire him because he did not have any pole climbing experience. Mr. Wilmore further stated that North Central could consider hiring Mr. Malone if a job as a janitor came open.

30. On the night of March 24, 2010, Mr. Woodard received a telephone call at home in which he was instructed to check something in the shed at work the next morning. Mr. Woodard assumed this had something to do with a project he was working on.

31. When he arrived at work the next morning, he got busy in the warehouse and forgot to check the shed. After retrieving supplies in the warehouse that morning, he noticed a noose hanging near his work area in the warehouse.

32. Mr. Woodard immediately told Don McCloud, the head of North Central's Human Resources Department, about the noose.

33. Mr. McCloud came to the warehouse and photographed the noose. Mr. Woodard told Mr. McCloud that North Central should review its video surveillance tapes to see who had hung the noose. While on the way to watch the videotape with Mr. McCloud, Mr. Woodard remembered the telephone call from the previous night and asked Mr. McCloud to come with him to the shed where the caller had instructed Mr. Woodard to check. Near the shed, the two men found a second noose hanging.

34. Mr. McCloud and Mr. Woodard then went to check the North Central surveillance tapes and identified Matt Wyatt as the person who made and hung the noose in the warehouse.

Despite knowing that Mr. Wyatt hung a noose near Mr. Woodard's work station, North Central took no corrective action against Mr. Wyatt or in response to the incident.

35. Though Mr. Wyatt was eventually mildly disciplined, it was not until after North Central had received a letter from Mr. Woodard's lawyer threatening legal action.

36. After learning that Mr. Malone had retained a lawyer, North Central hired Mr. Malone. He began working at North Central on or about May 17, 2010.

37. In July 2010, Ms. Patterson and Mr. Woodard attended a confidential mediation with North Central asserting claims of discrimination and retaliation. The mediation was unsuccessful. Immediately following the mediation, North Central filed a lawsuit against Ms. Patterson alleging in part that she had attempted to obtain money from North Central to which she was not entitled. North Central admits that this "attempt to obtain money" was by exercising her right to bring a lawsuit for unlawful discrimination and retaliation related to her recommending Mr. Malone for hire.

38. Shortly after North Central unlawfully terminated Ms. Patterson, other North Central employees began retaliating against, discriminating against, and harassing Mr. Woodard because he recommended Mr. Malone for hire.

39. On May 18, 2010, Mr. Woodard reported to North Central's H.R. Department that beer bottles and large rocks had begun being thrown at his family's house and in their front yard.

40. Mr. Woodard filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on August 4, 2010, as a result of the discrimination, harassment and retaliation that he continued to experience at North Central in the months after he recommended Dondi Malone for employment.

41. Upon information and belief, in September 2010, Mr. Woodard's home I.P. address was hacked and internet posts were made about Mr. Malone that appeared to be made by Mr. Woodard. Mr. Woodard explained to sheriffs how North Central is able to "hack into" its customers' I.P. addresses using the telephone office, which was located very near Mr. Woodard's home.

42. On September 16, 2010, Mr. Woodard attempted to return to work at North Central from approved leave under the Family and Medical Leave Act. North Central refused to accept his doctor's return to work release and forced Mr. Woodard to obtain a second release, which he promptly did the next day.

43. Upon his delivering the second release on September 17, 2010, North Central informed Mr. Woodard that he was being suspended without pay until October 1, 2010.

44. Mr. Woodard was suspended by North Central from September 17, 2010, to October 1, 2010, for allegedly telling a racist joke in the workplace. The alleged incident occurred in or around March 2010. Mr. Woodard had received a video text message on his phone while at work. He had opened the message and played it in the presence of a few co-workers. The voice on the video told a racist joke about President Obama. Approximately seven months later, for no apparent reason other than illegal discrimination or retaliation, North Central suspended Mr. Woodard for this action.

45. Upon returning to work in October 2010, Mr. Woodard discovered that, among other acts of retaliation and discrimination, his position in the warehouse had been taken away from him, his name was taken off of his door, his desk was gone, his personal belongings had been put into a closet, and his bathroom had been soiled with urine and feces.

46. The type of harassment described above continued for the next several weeks, until Mr. Woodard was constructively discharged on November 22, 2010. In his resignation letter to Ms. White, Mr. Woodard stated that his reasons for resigning his position of stock clerk were "retaliation, hostile work environment, discrimination, and harassment."

47. Following his constructive discharge from North Central Mr. Woodard secured employment with MasTec, Inc., and was to begin work for that company in January 2011.

48. North Central contacted MasTec and told the company that it did not want Mr. Woodard working on any projects that it contracted to MasTec.

49. As a result of North Central's demands, MasTec's project foreman, Patrick Lemay, called Mr. Woodard and terminated his employment with MasTec.

50. North Central discriminated against, harassed, and retaliated against Ms. Patterson and Mr. Woodard in violation of Title VII, § 1981, and the THRA because they recommended that North Central hire an African-American applicant. At all times relevant to this complaint, North Central, despite never having hired a permanent African-American employee, has been receiving federal funding or money. In addition to the money that it normally receives from the federal government, in 2009 North Central was approved to receive approximately $49 million in federal stimulus money, one-half as a grant and one-half as a loan, under the American Recovery and Reinvestment Act. Upon information and belief, North Central has received this money despite never having hired an African-American worker on a permanent basis until it hired Mr. Malone. Upon information and belief, North Central's actions in discriminating against and retaliating against Plaintiffs were in part to protect their receipt of such money while maintaining their institutionalized discrimination against African-American and other minority applicants and would-be applicants.

9

51. North Central sued and continues to pursue a lawsuit against Ms. Patterson for allegedly possessing some recorded conversations. It continues to prosecute its lawsuit against Ms. Patterson alone despite its knowledge that other workers possessed the same recording. Further, North Central has not sued the person whom it knows made and distributed the recording. North Central sued Ms. Patterson and continues to prosecute its lawsuit against her in retaliation for her recommending Mr. Malone for employment and for pursuing her claims against it.

**COUNT I – DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII**

52. Plaintiffs restate and incorporate herein the foregoing paragraphs.

53. North Central is an "employer" under Title VII. *See* 42 U.S.C. § 2000e (b).

54. Mr. Malone is, and Ms. Patterson and Mr. Woodard were, "employees" of North Central under Title VII. *See* 42 U.S.C. § 2000e (f).

55. Title VII makes certain employment practices unlawful. *See* 42 U.S.C. § 2000e, *et seq*.

> § 2000e-2. Unlawful employment practices
>
> (a) Employer practices. It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to **limit, segregate, or classify his employees or applicants for employment** in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2 (a) (emphasis added).

56. North Central limited its employees and applicants for employment to people that resided inside the Service Area, which was made up almost exclusively of Caucasians. The Service Area was far less racially diverse than cities and counties in close proximity to it.

57. By restricting its employees and applicants to almost exclusively one race, Caucasian, North Central "limited, segregated, or classified" employees and applicants for employment with North Central based upon race, in violation of Title VII.

58. North Central's policies and practices of restricting its applicant and employee pool is the result of intentional discrimination designed to weed out minority applicants. In the alternative, even if such policies and practices are not the result of intentional discrimination they had and continue to have a "disparate impact" on African-Americans and other minorities based upon race because the Service Area has a disproportionately low percentage of African-Americans and other minorities as compared to surrounding areas. Accordingly, these policies and practices violate the law and any opposition to these policies or advocacy for applicants that would not qualify for employment under these policies is protected activity.

59. 42 U.S.C. § 2000e-2(a) of Title VII prohibits discrimination and harassment against white employees for their association with and/or advocacy on behalf of African-American workers. See, e.g., *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000)(advocacy discrimination); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks, Inc*., 173 F.3d 988, 994-95 (6th Cir. 1999)(associational discrimination). Plaintiffs' claims of discrimination pursuant to Title VII, § 1981, and the THRA are associational and/or advocacy discrimination claims based upon discrimination directed at them, which caused them individual harm. Plaintiffs are each stating individual but related claims of discrimination and retaliation. Plaintiffs are not asserting "pattern and practice" claims on behalf of a class of

11

minority applicants. Nevertheless, the Defendant's pattern and practice of discrimination against African-Americans and other minorities in the recruiting and hiring process is related to and relevant to, and inextricably linked with the claims asserted by Plaintiffs. For example, had Defendant not engaged in a pattern and practice of institutionalized racism, Plaintiffs association and advocacy on behalf of an African-American job applicant and in favor of a racially diverse work force would not have prompted the discrimination directed at Plaintiffs by Defendant and its employees. Plaintiffs associated with and advocated on behalf of Mr. Malone and in favor of more racial diversity in North Central's work force. Plaintiffs' association with Mr. Malone and advocacy on behalf of Mr. Malone and increased diversity are the reasons why North Central discriminated against Plaintiffs. Additionally, Mr. Woodard suffered from a racially hostile work environment and harassment based upon his association with Mr. Malone and/or his advocacy on behalf of Mr. Malone and increased diversity at North Central. Plaintiffs each suffered personal harm as a result of the discrimination and harassment.

60. Title VII also prohibits an employer from retaliating against any of its employees for opposing any employment practice made unlawful by Title VII or for participating in investigations or proceedings regarding Title VII.

61. Ms. Patterson and Mr. Woodard actions, including the recommending of Mr. Malone, attempted to change the pattern of racist conduct at North Central and constitute opposition to Title VII violations. Additionally, Plaintiffs both participated in proceedings related to alleged violations of Title VII. Accordingly, Plaintiffs are protected against retaliation by the opposition and participation clauses contained in 42 U.S.C. 2000e-3(a).

62. North Central discriminated against and retaliated against Ms. Patterson and Mr. Woodard for their efforts to have Mr. Malone hired, in violation of Title VII.

12

Case 2:11-cv-00115   Document 25   Filed 04/17/12   Page 12 of 19 PageID #: 168

63. North Central discharged Ms. Patterson from employment in March 2010. North Central terminated Ms. Patterson's employment two days after she recommended an African-American man for hire, without giving her any other reason and without notice, warning, or progressive discipline. At the time of her discharge Ms. Patterson was performing her job in a satisfactory manner such that she had received the maximum merit increase in her salary just three days before her discharge.

64. North Central subjected Mr. Woodard to a racially hostile work environment and severe and pervasive harassment because of his association with and/or advocacy on behalf of Mr. Malone and/or in retaliation for his opposition to acts illegal under Title VII and/or participation in Title VII related investigations and proceedings. The harassment was by one or more supervisors and by co-workers. North Central had actual knowledge of the illegal harassment yet did not take appropriate remedial measures. North Central further created intolerable working conditions with the intent of forcing Mr. Woodard to quit because he had recommended Mr. Malone for employment. North Central constructively discharged Mr. Woodard in November 2010. Both Mr. Woodard and Ms. Patterson have been subjected to continuing retaliation and harassment as set forth herein.

65. The discrimination, harassment and retaliation against Mr. Woodard included, but was not limited to, hanging a noose in his work place, verbal abuse, demotion, harassment in moving Mr. Woodard's personal belongings and soiling his bathroom, violence towards Mr. Woodard's family and property, and suspension without pay in the guise of punishment for a nearly one-year-old alleged offense.

66. North Central retaliated against Ms. Patterson by, among other things, suing her for attempting to assert her claims for discrimination in May 2011. As a result of North Central's

13

pursuing its lawsuit against her, Ms. Patterson filed a second charge of continuing discrimination with the EEOC in June 2011 which is attached as Exhibit C and incorporated herein by reference. North Central retaliated against Mr. Woodard by causing his employment with MasTec, Inc. to be terminated in December 2010. As a result of North Central's retaliatory conduct, Mr. Woodard filed a second charge of discrimination and retaliation with the EEOC on April 18, 2011 which is attached as Exhibit D and incorporated herein by reference.

67. As a direct and proximate result of North Central's unlawful acts, Plaintiffs have suffered, and continue to suffer, emotional pain and suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

68. Plaintiffs both timely filed charges of discrimination with the EEOC, have received notice of their right to sue from the EEOC, and have filed this complaint within 90 days of receiving such notices. These charges are attached as Exhibit B and incorporated herein by reference.

69. Plaintiffs seek all damages available to them under Title VII, including lost wages, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which they may be entitled. Plaintiffs also specifically request reinstatement.

**COUNT II – DISCRIMINATION AND RETALIATION IN VIOLATION OF §1981.**

70. Plaintiffs restate and incorporate herein the foregoing paragraphs.

71. Federal law mandates that all persons within the jurisdiction of the United States be able to make and enforce contracts, as well as enjoy all of the benefits, privileges, terms, and conditions of their contractual relationships.

72. Furthermore, no actor, whether private or public, may interfere with the right of another person to "make or enforce" a contract and enjoy the full benefits of any contractual relationship.

73. Federal law, as well as public policy, demands that employees be able to exercise their rights under federal law without fear of reprisal or penalty from an employer.

74. An individual may bring a retaliation claim for suffering retaliation as a result of helping another individual secure his or her rights under § 1981. Discrimination against white employees by virtue of their advocacy on behalf of and/or association with African-Americans is prohibited by § 1981.

75. Plaintiffs were each parties to an employment contract with Defendant to be employed by Defendant and to work at Defendant's workplace.

76. Plaintiffs objected to and/or protested race and/or national origin discrimination and harassment in the workplace. Plaintiffs also advocated on behalf of and associated with Mr. Malone. Plaintiffs actions were statutorily-protected activities under § 1981.

77. North Central's termination of Ms. Patterson's employment constitutes discrimination and retaliation in violation of § 1981.

78. North Central harassed, discriminated against and retaliated against Mr. Woodard in violation of § 1981.

79. North Central's actions of suing and continuing to sue Ms. Patterson violate § 1981.

80. North Central's actions with respect to Mr. Woodard's employment with MasTec violate § 1981.

81. As a direct and proximate result of North Central's unlawful acts, Plaintiffs have suffered, and continue to suffer, emotional pain and suffering, professional and personal

embarrassment, humiliation, loss of enjoyment of life, and inconvenience. Plaintiffs also seek to be reinstated.

### COUNT III –DISCRIMINATION AND RETALIATION IN VIOLATION OF THE THRA

82. Plaintiffs restate and incorporate herein the foregoing paragraphs.

83. North Central is an "employer" as defined in the Tennessee Human Rights Act.

84. North Central and Nancy White engaged in, aided, abetted, incited, compelled and/or commanded persons to engage in discriminatory practices, in violation of T.C.A. § 4-21-301.

85. Plaintiffs were subjected to adverse employment actions on the basis North Central's engaging in, aiding, abetting, inciting, compelling and/or commanding person to engage in discriminatory practices, in violation of T.C.A. § 4-21-301.

86. As a direct and proximate result of North Central's unlawful acts, Plaintiffs have suffered, and continue to suffer, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

87. As a result, Plaintiffs are entitled to recover their damages, including lost wages, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which they may be entitled. Plaintiffs also seek to be reinstated.

### COUNT IV – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

88. Plaintiffs seek a declaratory judgment that North Central discriminated against them because of their association with and/or advocacy on behalf of an African-American job applicant. Plaintiffs further seek a declaratory judgment that they opposed institutionalized

16

Case 2:11-cv-00115   Document 25   Filed 04/17/12   Page 16 of 19 PageID #: 172

racism in the recruiting and hiring process at North Central and as a result were subjected to unlawful retaliation. Plaintiffs also request the court issue injunctive relief as deemed appropriate by the Court, which should include an appropriately fashioned injunction requiring compliance with EEO guidelines in order to protect Plaintiffs and other employees from being subjected to unlawful discrimination for associating with, advocating on behalf of and recommending minority applicants, who do not live within the North Central Service Area, for employment.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant:

1. That a trial by jury be had on all triable issues;
2. Judgment in favor of Plaintiffs and against Defendant on all Counts in this action;
3. Declaratory judgment that the practices complained of are unlawful and void;
4. Injunctive relief prohibiting future discrimination by limiting applicants to the Service Area;
5. Back pay and benefits to Plaintiffs;
6. Reinstatement and/or front pay and benefits to Plaintiffs;
7. Compensation to make Plaintiffs whole for the loss of benefits;
8. Compensatory damages for embarrassment, humiliation, emotional pain and suffering, mental anguish, severe stress and anxiety, psychological harm, inconvenience, and loss of enjoyment of life;
9. Punitive damages to Plaintiffs;
10. Attorneys' fees and expenses to Plaintiffs;
11. Prejudgment interest and, if applicable, post-judgment interest; and
12. Such other and further legal or equitable relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Charles P. Yezbak, III
**CHARLES P. YEZBAK, III (#18965)**
Attorney for Plaintiffs
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 250-2000
(615) 250-2020 Facsimile
yezbak@yezbaklaw.com

**CERTIFICATE OF SERVICE**

  This is to hereby certify that I have this 17th day of April 2012, electronically filed the above with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

             E. Guy Holliman
             Farrar Holliman Medley & Butler
             P.O. Box 280
             102A Scottsville Road
             Lafayette, TN 37083

             C. Eric Stevens (BPR #010632)
             Littler Mendelson, P.C.
             3200 West End Avenue, Suite 500
             Nashville, TN 37203
             (615) 383-3033
             (615) 256-8197 Facsimile
             EStevens@Littler.com

             Tara L. Presnell (BPR #024424)
             Littler Mendelson, P.C.
             3200 West End Avenue, Suite 500
             Nashville, TN 37203
             (615) 383-3033
             (615) 256-8197 Facsimile
             TPresnell@Littler.com


             /s/ Charles P. Yezbak, III
             Charles P. Yezbak, III